E-FILED
Friday, 13 January, 2017  10:00:31 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

KATHY L. POWELL,                    )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )          NO. 13-3305
                                    )
CAROLYN W. COLVIN,                  )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )

## OPINION

RICHARD MILLS, U.S. District Judge:

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security, denying Plaintiff Kathy L. Powell's application for disabled Widow's Insurance Benefits and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Pending are the Plaintiff's Motion for Summary Judgment and the Defendant's Motion for Summary Affirmance.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

On March 8, 2013, a hearing was held before Administrative Law Judge (ALJ) Ben Barnett. The Plaintiff was born in 1954 and was 58 years

old at the time of the hearing.  The Plaintiff states that she has a seventh-grade education.  The ALJ determined she has a combination of medical problems including bipolar disorder II, cocaine dependence in sustained full remission, antisocial personality disorder, borderline intellectual functioning, attention deficit disorder (ADHD), and panic disorder with agoraphobia.  See 20 C.F.R. §§ 404.1520(c) and 416.920(c).

The Plaintiff's application for Widow's Insurance Benefits was filed on February 1, 2011 and her application for SSI was filed on December 9, 2010, alleging disability beginning on November 19, 2010.  Her claims were denied initially and on reconsideration.

On April 10, 2013, the ALJ issued a decision.  The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ further found that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but

with the following nonexertional limitations: limited to simple, routine, repetitive tasks; limited to a low stress job defined as no more than occasional changes in the work setting and occasional decision making; no production rate or pace work; no interaction with the public; and brief and superficial interaction with coworkers and with no tandem tasks.

The ALJ found that although the Plaintiff was unable to perform any past relevant work pursuant to 20 C.F.R. § 404.1565 and 416.965, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, given her age, education, work experience and residual functional capacity.  See 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a).

Accordingly, the ALJ found that Plaintiff has not been under a disability since November 19, 2010, and issued an unfavorable decision denying benefits.

The Appeals Council denied the Plaintiff's Request for Review on July 23, 2013, thus making the ALJ's decision the final decision of the Commissioner.

The Plaintiff contends for a number of reasons that the Commissioner's decision is not supported by substantial evidence. First, the Appeals Council failed to consider certain new and material evidence that was submitted which would have warranted changing the ALJ's decision. Second, the ALJ's mental RFC assessment is deficient as a matter of law because the ALJ erroneously dismissed the findings made by Dr. Frank Froman, who has worked as a Social Security consultative examiner. Third, the ALJ committed reversible error in according no weight to treating nurse and mental health professional Bessie Goerlich, MHP. Fourth, the ALJ erred in determining that Plaintiff's mental impairment did not meet a Listing. Finally, the Plaintiff asserts the ALJ's credibility determination was patently erroneous.

## II. PLAINTIFF'S TESTIMONY

The Plaintiff testified she worked six weeks as a cleaner for the Quincy Civic Center and Motel before being fired after having anxiety attacks. Moreover, the Plaintiff worked for First Class Cleaning for two and a half months before getting fired after an argument with the supervisor and

upon having an anxiety attack.  The Plaintiff is a widow with three adult children.  She is 5'4" and weighs 168 pounds after losing 10-12 pounds due to loss of appetite.  The Plaintiff lives in a mobile home with her daughter, who has a disability, and her grandson.  The Plaintiff does not have a medical card, though she does receive food stamps.

The Plaintiff dropped out of school during the eighth grade school year.  She repeated both her sixth and seventh grade years and was in "CDP" classes, which the Plaintiff was unable to define.  The Plaintiff does not read very well, though she is able to read familiar street signs.

The Plaintiff testified she cannot work because of her mood swings and slow comprehension.  She has been diagnosed as bipolar and has four bad days a week.  On a bad day, the Plaintiff has a number of mood swings and ups and downs.  In such situations, she goes to her room or leaves the house.  On certain days, she stays in bed in order to avoid people.  The Plaintiff has crying spells and feels depressed.  On her two or three good days per week, the Plaintiff cleans and plays with her grandson.  The Plaintiff has problems with her anger and does not leave the  mobile home

on bad days.

The Plaintiff testified that little things make her nervous. The Plaintiff thinks people are watching her and sometimes shops at late hours in order to avoid people. When the Plaintiff has worked, she avoided break rooms because there were too many people around. The Plaintiff has problems with her temper on a daily basis.

The Plaintiff testified she sometimes has panic attacks. She feels nervous and tries to think of things to avoid having a panic attack. When people tell her two or three things to do, the Plaintiff panics because she cannot remember what she was told. When her supervisor at the Quincy Civic Center admonished her, the Plaintiff had an anxiety attack and hollered at her supervisor. At First Class Cleaning, the Plaintiff was told he was performing a task wrong. The Plaintiff got mad and hollered at co-workers and was fired.

The Plaintiff testified she has had other panic attacks at work. She has also had panic attacks because of family issues. The Plaintiff says she has had panic attacks two to three times per week since later 2010.

6

### III. DISCUSSION

A. Standard of review

When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner.  See Schaaf v. Astrue, 602 F.3d 869, 874 (7th Cir. 2010).  The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Yurt v. Colvin, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted).  Although the Court's task is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion."  Id. at 856-57.

B. Appeals Council and new and material evidence

The Plaintiff alleges the Appeals Council failed to consider new and material evidence which would have warranted changing the ALJ's decision.

These mental health records covering April through June 2013 were submitted to the Appeals Council but were not included in the district court record.   The Appeals Council acknowledged that Plaintiff had submitted additional evidence and stated it considered that evidence in determining the appeal.

This evidence cited by the Plaintiff post-dates the ALJ's April 10, 2013 decision.  Because the evidence was not before the ALJ at the time of the decision, the Court does not consider it for purposes of substantial evidence review.  See Carter v. Colvin, 556 F. App'x 523, 527 (7th Cir. 2014).   Instead, the Court may only determine whether the Appeals Council committed legal error when it considered the additional evidence and found that because the information was about a later time, it did not affect the ALJ's decision about whether the Plaintiff was disabled beginning on or before April 10, 2013.  See Farrell v. Astrue, 692 F.3d 767, 771-72 (7th Cir. 2012).

The additional evidence assigning Global Assessment of Functioning scores of 50 or below does not add anything new or material to the record

because there were already a number of such scores in the record.  To the extent the Plaintiff alleges statements from Ms. Goerlich were not considered, the Plaintiff submitted and the ALJ considered similar opinion evidence indicating that Plaintiff had exhibited disabling mental health limitations.  The ALJ rejected those opinions for reasons that will be discussed.

Additionally, there is nothing in the mental health records suggesting that any mental health impairments were disabling up through the date of the ALJ's decision.  The notes pertain only to the time of her visit to the mental health professional.  Because there is no indication that the 2013 records addressed the Plaintiff's functioning prior to the date of the ALJ's decision, the Court concludes the evidence was not material.

Based on the foregoing, the Court concludes that the evidence submitted to the Appeals Council does not constitute a basis for remand.

C. Dr. Froman's opinion and Plaintiff's RFC

The Plaintiff alleges the ALJ's mental RFC is deficient as a matter of law in erroneously dismissing the findings of Frank Froman, Ed.D., an

examining clinical psychologist.  Dr. Froman, who has worked as a Social Security Consultative Examiner, was asked by the Plaintiff's counsel to provide a mental status examination of the Plaintiff.

Dr. Froman noted that Plaintiff "presented in a fairly normalized manner.  Her ability to relate was fairly good.  Her speech was clear, appropriate, easy to understand and relevant.  Rate, rhythm, and content were within normal limits" and eye contact was good.  Dr. Froman concluded that Plaintiff's "level of language use was suggestive of one who had a mild intellectual impairment."  Dr. Froman observed that Plaintiff had difficulty naming four recent presidents.  When asked to name any president she could remember, the Plaintiff easily named five, including the current president and two other recent presidents.  The Plaintiff was able to add and multiply but was not able to perform Serial 7s.  The Plaintiff knew similarities between a bush and a tree and between a piano and a violin but had trouble describing how air and water are alike.  Dr. Froman concluded that Plaintiff was "oriented times three and in good contact to reality," which the ALJ noted in his RFC analysis.

Dr. Froman noted a number of subjective complaints.  The Plaintiff reported she was a cleaning fanatic who always had to straighten things. She must always have a light on and checks the locks in the home frequently.  Dr. Froman observed that she might have obsessive compulsive disorder.

The Plaintiff complained about poor memory and rapid thoughts. She reported that her multiple incarcerations have sensitized her to being in a confined setting, causing her to be "on the go, restless," and that she does not socialize at all.   However, the Plaintiff reported significant interaction with family members.  Dr. Froman estimated the Plaintiff's IQ to be in the borderline range–at 75 plus or minus 5.  He assigned a Global Assessment of Functioning (GAF) score of 48.[1]

Dr. Froman concluded that Plaintiff is able to understand simple oral but not written instructions and could manage her own benefits.  However,

_____

[1]The GAF Scale represents a clinician's judgment of an individual's overall level of functioning and a GAF of 41 to 50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job, cannot work)."  Id.

Dr. Froman also found that Plaintiff "appears unable to perform one or two step assemblies at or even near a competitive rate" and is "not able to relate effectively to co-workers and supervisors." As the Plaintiff emphasizes, the ALJ mistakenly thought that Dr. Froman concluded she was in fact able to relate effectively to co-workers and supervisors. However, any error was harmless because the ALJ assigned little weight to Dr. Froman's opinion.

Because the ALJ found that Dr. Froman's report reflects limitations that are more severe than what the objective evidence supports, see 20 C.F.R. § 404.1529(c)(4), the ALJ did not rely on Dr. Froman's opinions in support of his findings.

The Plaintiff has a very limited work history. Dr. Froman opined that "the likelihood of [Plaintiff] being able to hold competitive employment is exceedingly low." The ALJ observed that some of Dr. Froman's opinions were based on factors not entirely related to a mental health condition and he afforded those opinions little weight. Dr. Froman's conclusions rely partly on the Plaintiff reporting having no stable jobs in her work history and also a history of incarceration. They rely in part on the Plaintiff's

intellectual capabilities, slow rate of functioning and her avoidance of others.  The ALJ also found that the limitations noted by Dr. Froman were largely based on the Plaintiff's subjective complaints, including her belief that she could not work due to her anxiety around others and an unstable work history.  As for her subjective complaints, Dr. Froman recorded as follows:

> She further complains about poor memory, and forgetting most of the things she has to do.  She says she suffers from rapid thoughts, and often has times when she "can't settle down."  She indicated that even as a child, "I was always in a rush–couldn't focus, was always in the principal's office."  Her life has been marred by multiple incarcerations, which have sensitized her to being in a confined setting.  She is always "on the go, restless," and needing to go to the next place rapidly.

Tr. 518.  The Plaintiff contends that Dr. Froman did not simply rely on her subjective report of symptoms.  Dr. Froman also reviewed records, including records from Transitions, the Plaintiff's mental health provider, in formulating his opinion.

The ALJ explained he afforded little weight to Dr. Froman's report because Dr. Froman stated his opinion that Plaintiff would be unable to hold competitive employment is also partly due to her history of

13

incarceration.  The report states in part that "with her history of multiple incarcerations, limited intellectual capacities, slow rate of functioning, and avoidance of others, the likelihood of her being able to hold competitive employment is exceedingly low." Tr. 519.  However, the Plaintiff's history of incarceration is not related to her mental health status and is not relevant to whether she is disabled.

The Plaintiff asserts that having worked as a consultative examiner, Dr. Froman is well aware of what is required in order to show a disability. While Dr. Froman mentioned job instability and multiple incarcerations as factors which contributed to her difficulty in securing employment, he also noted her "limited intellectual capacities, slow rate of functioning, and avoidance of others."  The Plaintiff contends her job instability and multiple incarcerations also support a conclusion that she has extensive mental health limitations.  The Plaintiff was noted to be released from the Illinois Department of Corrections on November 19, 2010, with the recommendation that she receive psychiatric services, counseling and substance abuse evaluation.

14

The ALJ found that the portions of Dr. Froman's report that were based on his objective observations supported relatively normal functioning and only a mild intellectual impairment.  The Court concludes the ALJ adequately considered Dr. Froman's opinions and there is evidentiary support as to this portion of the ALJ's decision.

D. Other record evidence and RFC finding

The ALJ also considered the opinions of the Plaintiff's treating mental health professional, Bessie Goerlich, MHP, a nurse at Transitions of Western Illinois ("Transitions"), with whom the Plaintiff met on May 11, 2011 for the first time.  Ms. Goerlich's opinions were co-signed by Alan Obert, a licenced social worker who coordinates the behavioral health program at Transitions.  The ALJ noted that although neither Ms. Goerlich nor Mr. Obert is an acceptable medical source for purposes of opining on whether the Plaintiff is disabled, he nevertheless considered their opinions. The Plaintiff claims the ALJ erred in not giving any weight to Ms. Goerlich's opinion.

The ALJ noted Ms. Goerlich's opinion that Plaintiff has "mostly

marked limitation in her ability to understand, remember, and carry out instructions and in social interaction."  However, the ALJ concluded that the severity of limitations opined by Ms. Goerlich are "not supported by the record, which shows relative benign objective mental status evaluation results."

The ALJ observed that Plaintiff has a history of treatment for bipolar disorder and substance abuse.  In September 2010, just prior to the alleged onset date, the Plaintiff was diagnosed with bipolar disorder with rapid cycling that was in remission, cocaine dependence in remission as she was incarcerated (in a controlled environment), and cluster B personality traits. The ALJ observed that Plaintiff was being treated with medication at that time.  The record shows she was compliant with medications and denied any side effects.  Moreover, the Plaintiff was alert, oriented, cooperative, had good hygiene and grooming, made good eye contact, had good insight and judgment and had a normal range of motor behavior, affect, speech and thought content.

The ALJ noted that, after her alleged onset date, the Plaintiff

16

complained of mood swings during routine counseling sessions.  These counseling sessions were a condition of parole upon the Plaintiff's release from prison in November 2010.  The Plaintiff's treatment was limited to the prescription of medication.  The ALJ observed that a mental status evaluation revealed restless motor activity, pressured speech, obsessive thoughts and circumstantial thought content.  He noted, however, that Plaintiff's mood, orientation, memory and insight were normal.  At this time, the Plaintiff's GAF score was assessed at 65, suggesting only mild functional limitation.  The ALJ stated that Plaintiff's diagnosis at this time was bipolar disorder II with rapid cycling and cocaine dependence in sustained full remission.

The ALJ reiterated that the record shows the Plaintiff's symptoms were moderated with medication.  He considered that Plaintiff subjectively reported in January, March and April 2011 that she was unable to work with people, disliked authority, was irritable and had mood swings. However, the ALJ noted that Plaintiff was treated in a conservative manner with medication.  Her behavior was reported as cooperative and other

17

results were benign.  The ALJ states that, although the Plaintiff occasionally experienced an "exacerbation of symptoms," these episodes corresponded with not taking her medication or situational stressors, such as a move to a new apartment or financial problems.  The Plaintiff improved with an adjustment in medication.  By the end of 2011, the Plaintiff reported getting out of the house more often and looking forward to getting her house, which helped with her depression and anxiety.

The ALJ observed that Plaintiff continued with routine mental health treatments in 2012.  The Plaintiff reported that she did better when active with her medication and counseling.  In September 2012, the Plaintiff told her mental health professional that she was unable to work due to mood fluctuations, which sometimes caused her to lash out at others.  The ALJ noted that a mental status evaluation revealed irritable and anxious mood, blunted affect and the Plaintiff reported obsessive behaviors.  However, other results were benign.  The ALJ pointed to reports of good grooming, dress, gait, motor skills, speech, concentration, thought processes, attention, memory and insight.  This could suggest that Plaintiff's symptoms were not

as severe as alleged.   However, Ms. Goerlich diagnosed anti-social personality disorder.  The ALJ stated it appears the diagnosis was based on the Plaintiff's subjective report.  In late 2012, the Plaintiff was being treated conservatively with counseling, medication and relaxation exercises. The ALJ observed that, although the Plaintiff noted an exacerbation in December 2012 due to a conflict with her daughter, the Plaintiff's counselor reported she was stable and improved.

The ALJ found that Ms. Goerlich's September 2011 opinions, which included "mostly marked limitation[s] in her ability to understand, remember, and carry out instructions and in social interaction," were not supported by the record.  Ms. Goerlich observed, "Kathy reports problems with carrying out complex instructions and has demonstrated this by the inability to maintain employment.  Kathy is unable to work around other people due to severe mood swings and is unable to manage her moods on her own, while having little support and a lot of anxiety."

The Plaintiff contends the ALJ's RFC determination was inadequate. The records show that mental health providers observed her cycling

between moods.  "[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."  See Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011).

The ALJ mostly ignored the Plaintiff's history of low GAF scores. Moreover, the Plaintiff disputes the ALJ's finding that she is better with treatment and claims that, while compliant with treatment, the Plaintiff continues to suffer from serious mental health symptoms.  In any event, "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce."  Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011).

The Plaintiff alleges that while she may have made progress, that does not mean she was not suffering from disabling symptoms.  If Dr. Froman's opinion concerning her mental RFC were given proper weight, the Plaintiff contends the ALJ would have determined she was disabled.

Even though Ms. Goerlich (and Mr. Obert) are not acceptable medical sources, the ALJ considered the opinions and noted they were inconsistent

with the record as a whole.  See 20 C.F.R. §§ 404.1513(a), 416.913(a).

After reciting the Plaintiff's symptoms of her mental health impairments,

the ALJ noted that her treatment was conservative and her symptoms

relatively benign.  Upon taking into account the Plaintiff's mental health

limitations, the ALJ limited the Plaintiff to simple, routine, repetitive tasks

in a low-stress job–meaning no more than occasional changes in a work

setting and only occasional decision-making.  The ALJ also limited the

Plaintiff to work involving no production rate or pace work, no interaction

with the public and only brief and superficial interaction with co-workers

with no tandem tasks.  Accordingly, the ALJ did take the Plaintiff's mental

health interactions into consideration in determining her RFC.

This is not a case in which the ALJ, in a conclusory fashion, simply

rejected all the opinions indicating severe limitations and adopted the

opinions suggesting mild limitations.  The ALJ also evaluated the opinions

of a state agency psychologist and medical expert and assigned them both

"little weight."  Leslie Fyans, Ph.D., opined that Plaintiff had only mild

limitations in her activities of daily living and maintaining concentration,

persistence or pace and moderate limitations in social functioning.  The ALJ

observed that "the medical evidence of record shows the claimant more

functionally limited than opined by the State Agency psychologist," and he

thus rejected Dr. Fyans's opinion.  The opinion of the state agency medical

expert was also afforded "little weight."  The record shows that, although

the ALJ considered a number of different medical sources that were part of

the record, the ALJ did not adopt or afford "great weight" to any of the

opinion evidence of record.

### E. Weight of evidence

The Plaintiff also alleges that the ALJ committed reversible error in

according no weight to treating nurse and mental health professional Bessie

Goerlich.  Evidence from such sources may be used "to show the severity

of [a claimant's] impairment(s) and how it affects [the claimant's] ability

to work."  20 C.F.R. §§ 404.1513(d), 416.913(d).   As previously stated,

the ALJ noted Ms. Goerlich's opinion of marked limitations but found that

the severity of the limitations opined by Ms. Goerlich are not supported by

the record, which the ALJ stated shows "relative[ly] benign objective mental

status evaluation results." The ALJ found Ms. Goerlich's opinions were not supported by some of her own counseling and treatment records and were inconsistent with the record as a whole.

Accordingly, the Court concludes that the ALJ properly considered Ms. Goerlich's opinion.

F. Whether mental impairment met listing

The Plaintiff contends the ALJ erred in determining the Plaintiff's mental impairments did not meet one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Although the ALJ found that Plaintiff had severe impairments of bipolar disorder II, cocaine dependence in sustained full remission, antisocial personality disorder, borderline intellectual functioning, ADHD and panic disorder with agoraphobia, the ALJ found that the impairments did not meet the Part B criteria in that the condition did not result in at least two of the following: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of

23

extended duration.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06 Pt. B.  "Marked" means "more than moderate but less than extreme," and "the degree of limitation is such as to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  Id. at § 12.00, Pt. C.  "Moderate" means more than mild but less than marked.

The ALJ found that Plaintiff had moderate limitations in her activities of daily living, social functioning and concentration, persistence and pace. He found the evidence did not reflect decompensation periods of extended duration.

The Plaintiff contends the ALJ did not adequately consider certain evidence regarding the Plaintiff's activities of daily living.  The ALJ cites what the Plaintiff is able to accomplish on her "good days" and does not recognize that, on her bad days, the Plaintiff's activities of daily living are significantly different.  "The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a "good day" does not

imply that the condition has been treated."  Scott, 647 F.3d at 740.

The record shows that the ALJ acknowledged the Plaintiff's severe mental limitations and discussed the evidence suggesting mild limitations and noted evidence indicating exacerbations or increases in the Plaintiff's symptoms.  The ALJ found that Plaintiff's reported activities of daily living are inconsistent with the alleged severity of her symptoms.  The Plaintiff's argument that the limitations on her daily activities are marked is based mostly on her own testimony and statements regarding her bad days.  The ALJ considered this testimony and noted that some of the functions the Plaintiff admits to performing in her daily life contradict claims she made regarding her impairments.  The Court concludes that the medical evidence of the Plaintiff's "bad days" supports limiting activities of daily living to a moderate instead of a marked degree.

The Plaintiff alleges the ALJ found that she had only moderate restrictions in social functioning because she has "supportive interpersonal relationships with her sister, children and grandchild" and spends time with people who live with her and did not have trouble communicating with her

representative or the ALJ during the hearing.  The ALJ noted that Plaintiff and Plaintiff's sister had both reported that Plaintiff has problems getting along with family, friends, neighbors and others, does not get along well with authority figures, and has been fired from a job because of problems getting along with other people.  The "ability to maintain a small number of close relationships does not undermine [a claimant's] testimony that she is afraid of going out in public."  Larson v. Astrue, 615 F.3d 744, 752 (7th Cir. 2010).  The ALJ also noted the Plaintiff's testimony that she is nervous around crowds and has episodes of anger but found she was not socially isolated.  The ALJ considered the fact that Plaintiff is able to attend treatment sessions and communicate appropriately with healthcare professionals and was also able to communicate effectively throughout the hearing.  The ALJ recognized the Plaintiff has moderate restrictions rather than marked restrictions in social functioning.  The Court concludes there is support in the record for this finding.

The Plaintiff alleges the ALJ found that the Plaintiff has only moderate difficulties in concentration, persistence or pace because she

reported an ability to go to her appointments, take care of her personal needs, take her medication, pay her bills and was able to respond to questions at the hearing.  The Plaintiff states that she may be able to perform those tasks on her good days.  On her alleged four bad days per week, however, the Plaintiff is usually not able to complete those tasks.

The ALJ noted that Dr. Froman had administered diagnostic mental health tests and had estimated the Plaintiff's IQ at 75, plus or minus five points.  The Plaintiff does not need reminders to go places and does not need someone to accompany her.  Any inability to pay bills is due to financial constraints, not impairment.  The ALJ noted that Plaintiff and her sister reported that Plaintiff is able to count change, handle a savings account and use a checkbook/money orders.  The ALJ noted that Plaintiff later reported having difficulty with tasks involving money, though she did not report a precipitating event.  The ALJ also observed that Plaintiff and her sister initially reported difficulty paying attention due to anger and frustration and following written instructions, though she was able to finish tasks and follow spoken instructions.  The Plaintiff later reported difficulty

27

in each of those areas.  The ALJ noted that Plaintiff had no difficulty focusing on questions, responding appropriately, or formulating responses during the hour-long hearing.  Thus, there was no apparent precipitating event for any change in those areas.

To the extent that Plaintiff alleges that she has marked limitations in concentration, persistence or pace because she has several bad days per week, the ALJ discounted the Plaintiff's allegations as inconsistent with the evidence as a whole.  The ALJ considered the Plaintiff's statements and evaluated the evidence and resolved conflicts.  The Court concludes there is evidentiary support for the ALJ's finding of moderate difficulties.

The Plaintiff further asserts that the ALJ would have found that she met a listing if he had given "controlling weight" to the opinions of non-treating examining psychologist Dr. Froman and mental health professional Ms. Goerlich.  Because neither mental health care professional was a "treating source," however, neither opinion is entitled to controlling weight. See 20 C.F.R. § 404.1527(c).  Moreover, it is apparent from the ALJ's decision that he evaluated both opinions and gave reasons for assigning

little weight.

Based on the foregoing, the Court concludes that Plaintiff has not met her burden of showing that she met or medically equaled all of the requirements for a listed impairment.  The ALJ referred to several mental health listings, which expressly found that Plaintiff's impairments did not meet or medically equal the requirements of those listings.  Moreover, the ALJ found that Plaintiff had a number of mental limitations, as reflected in the RFC finding.  The Court concludes that Plaintiff failed to show that the ALJ erred in finding moderate–rather than marked–limitations in the activities of daily living, social functioning, and concentration, persistence or pace.

Based on the foregoing, the Court concludes the ALJ's finding that Plaintiff did not meet or medically equal the severity of the listing concerning affective disorders or anxiety-related disorders is supported by substantial evidence.

G. ALJ's credibility determination

In considering the Plaintiff's credibility, the ALJ stated in part:

The claimant testified that her limitations hinder her ability to maintain functionality for extended periods, but doctor statements do not support her allegations, which brings her credibility into question.  Giving the claimant the benefit of every possible doubt, I have credited her testimony as much as the medical evidence of record allows; however, the record as a whole simply does not support the extreme allegations as to functional limitations.  The record contains subjective complaint of conflict with co-workers, yet objective psychological evaluations consistently revealed cooperative behavior and overall normal results.  Exacerbations were due to situational stresses within the claimant's family and due to non-compliance with medication.  The claimant's treating mental health counselor concluded the claimant stable and overall improved with medication and counseling.

The Plaintiff contends the ALJ did not adequately cite "specific reasons" for the credibility finding.  She alleges the ALJ incorrectly summarizes the records and cherry-picks only the notes supporting a finding of not disabled while ignoring the larger volume of notes supporting a finding of disabled. The Plaintiff further asserts the ALJ does not credit all of the mental health providers who actually examined the Plaintiff and whose findings support the Plaintiff's allegations.

The record shows that the ALJ examined all of the evidence, including treatment notes, clinical and diagnostic reports, medical source opinions,

other opinion evidence, the Plaintiff's lay witness reports and Plaintiff's allegations and testimony.  The ALJ provided specific reasons to find the Plaintiff's allegations were not entirely credible.  Specifically, the ALJ addressed the Plaintiff's credibility and observed that doctor statements do not support her allegations that her limitations hinder her ability to maintain functionality for extended periods–specifically that she has four bad days per week.  Upon considering the Plaintiff's mental health treatment notes, the ALJ concluded that the evidence supported a finding of moderate mental health limitations and not disabling limitations.  The ALJ noted that Plaintiff was treated conservatively with medication and her psychological evaluations revealed cooperative behavior and overall normal results.  The ALJ further observed that the Plaintiff's exacerbations of symptoms were due to situational stressors with her family or non-compliance with medication.  In January 2013, the Plaintiff was noted to have made progress and was more stable in her mood having better utilized her coping skills.

The ALJ reasonably concluded that Plaintiff's allegations regarding the

31

severity of her mental limitations were not entirely consistent with the record.  Upon crediting her testimony to the extent it was not inconsistent with the medical evidence, the ALJ determined that the record did not support her extreme allegations regarding functional limitations.  The ALJ considered the information of record and assessed an RFC with numerous mental health restrictions to account for the Plaintiff's credible moderate mental health restrictions.  The Court's review of credibility determination is "extremely deferential" and the Court is unable to conclude that the ALJ's finding was "patently wrong."  See Bates v. Colvin, 736 F.3d 1093, 1098 (7th Cir. 2013).

## IV. CONCLUSION

For all of these reasons, the Court concludes that the Commissioner's decision is supported by substantial evidence.

<u>Ergo</u>, the Plaintiff's Motion for Summary Judgment [d/e 9] is DENIED.

The Defendant's Motion for Summary Affirmance [d/e 12] is ALLOWED.

32

The decision of the Commissioner is affirmed.

The Clerk will enter Judgment and terminate this case.

ENTER: January 12, 2017

FOR THE COURT:

 /s/ Richard Mills
Richard Mills
United States District Judge